## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

In re:                                             )
                                                   )
**PUSHMATAHA COUNTY – CITY OF**                    )
**ANTLERS HOSPITAL AUTHORITY,**                    )   Case No. 16-81001
                                                   )   Chapter 9
                    Debtor.                        )

## PATIENT CARE OMBUDSMAN REPORT

Deborah Burian, the duly appointed patient care ombudsman, pursuant to 11 U.S.C. § 333(b)(2) files hereby her eleventh periodic report, for the period June 20, 2018 to August 17, 2018.

/s/ Mark B. Toffoli
Mark B. Toffoli  OBA # 9045

THE GOODING LAW FIRM, P.C.
204 North Robinson Ave., Suite 605
Oklahoma City, Oklahoma  73102
TELEPHONE: (405) 948-1978
TELEFACSIMILE: (405) 948-0864
EMAIL: mtoffoli@goodingfirm.com

ATTORNEYS FOR
DEBORAH BURIAN

Patient Care Ombudsman's Eleventh Report in re: Pushmataha County Hospital – City of Antlers Healthcare Authority

Case 16-81001

COMES NOW, Deborah Burian, Patient Care Ombudsman ("Ombudsman") and pursuant to 11 U.S.C. 333 submits her Eleventh report.

**Factual Background**

On the 20th day of October 2016, the United States Trustee for the Eastern District of Oklahoma appointed Deborah Burian as Patient Care Ombudsman in the case of Pushmataha County Hospital – City of Antlers Healthcare Authority.

This is the Ombudsman's Eleventh report and includes the reporting period from June 20, 2018 to through August 17, 2018.

**Basis of Review**

As a condition of participation in Medicare, the primary payor for most hospitals, facilities must be surveyed and ensured to be in compliance with the Medicare Conditions of Participation (42 CFR Part 485 Subpart F) by an approved body. This survey is completed by a state regulatory agency (Oklahoma State Department of Health - OSDH) or a private accrediting agency; most commonly the Joint Commission on Health Care Accreditation (JCAHO). Pushmataha County Hospital, herein referred to as "Pushmataha" is certified by the Oklahoma State Department of Health (OSDH).

Pushmataha also participates in the Medicare program as a "Swing Bed" facility and is certified to provide Skilled Nursing Facility (SNF) care to approved patients.

For all healthcare facilities, care standards are established by regulation; regulations are then translated at the federal and state levels with "interpretive guidelines." These guidelines provide a map for the generally accepted quality of care which must be provided. States may have additional guidance; where that guidance may differ at the state and federal levels, the more stringent regulation applies. Throughout the Ombudsman's monitoring role, in addition to other issues which may arise, Ombudsman is assessing whether observed care and services meet those requirements.

**Sixty-Day Review**

In addition to routine contact with hospital, on 8/14/2018 Ombudsman conducted an onsite visit, making rounds, interviewing staff, patients, families and administration and otherwise directly monitoring facility operations.

Ombudsman arrived at approximately 7:40 am and observed breakfast service. Kitchen was clean and orderly, trays matched patients' dietary orders. Kitchen has done an excellent job of providing accurate therapeutic menus while having to obtain food supplies from a variety of resources.

There has been an issue with the kitchen hand-washing sinks not consistently maintaining warm water for handwashing (OAC 310:257-3.10) and at a temperature of at least 100 degrees Fahrenheit (OAC:257-9.14.) This was discussed with facility on Ombudsman's prior visit. On 7/17/2018, pursuant to the Oklahoma State Department of Health, Consumer Protection Division and in keeping with State Code OAC 310:257, the Pushmataha City/County Health Department conducted a routine monitoring survey and noted that the hand washing sinks were "not in compliance." Temperatures again were measured at the time of the Ombudsman's 8/14/18 visit and sink temperatures remained out of compliance.

This concern was reported to facility administration and on 8/22/2018, administrator reported back to Ombudsman that a dedicated hot water heater had been installed for the kitchen hand washing sink and temperature was reaching 130 degrees, thus exceeding the minimum hand-washing temperatures noted at OAC:257-9.14.

Ombudsman conducted walking rounds of the facility. Personnel report no difficulty in acquiring supplies, linens, medications or other needed items. Staffing appears to be adequate and no patient complaints were noted. During rounds, an issue arose with the preventative maintenance of biomedical equipment.

In regard to equipment preventative maintenance, as noted at CFR 482.41 (c)(2) "Facilities, supplies, and equipment must be maintained to ensure an acceptable level of safety and quality. Further, equipment is notes to include "... devices intended to be used for diagnostic, therapeutic or monitoring care provided to a patient by the hospital (e.g., IV infusion equipment...)"

It has been reported to Ombudsman that around the time of the initial bankruptcy filing, when the hospital separated from the management agreement with Atoka County Medical Center, that some changes of personnel were made, and the facility contracted with an outside vendor to monitor the maintenance of biomedical equipment, however, during rounds, it was observed that some equipment, including a currently in-use IV pump, did not have up-to-date required preventative maintenance (PM) documentation. Upon interview, personnel report that that the monitoring service was "out last week." When Ombudsman asked about the maintenance on a specific piece of equipment, it was stated that no one internally monitors preventative maintenance, that the team relies on the outside contractor, (HMS) and it was likely that the piece of equipment due for maintenance was missed due to being in use when the vendor attended the facility for the purpose of conducting preventative maintenance. While it is acceptable under CFR482.41(c)(2), the facility retains ultimate responsibility for ensuring that preventative maintenance occurs.

It appears that post-bankruptcy, the facility does not have an adequate system for ensuring preventative maintenance of biomedical equipment. In addition, the hospital is not following its stated policy for designating and storing equipment that is not currently in use or is not working. This is evidenced by the presence of pumps in the equipment room that are reported to be unused and have PM (preventative maintenance) stickers which have not been updated since 2015 as well as the presence, in the same storage room of "mist tents" that are stocked with saline solution which expired in 2017. This was reported to administration and follow up will be monitored.

During this monitoring period, Ombudsman received one phone call that was query regarding the ombudsman role and no complaints. Facility continues to appropriately distribute Patient Care Ombudsman Notice.

In the next 60 days Ombudsman will follow up on these areas of concern and will continue monitoring role.

Wherefore, Ombudsman, Deborah Burian prays the court accept and approve this 60-day report of Deborah Burian and for such other relief as the Court deems just and appropriate.

Respectfully submitted,

Deborah Burian
2125 NW 28th St.
Oklahoma City, OK
73107
(405) 623-0778