IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

In re: )
)
**PUSHMATAHA COUNTY – CITY OF** )
**ANTLERS HOSPITAL AUTHORITY,** ) Case No. 16-81001
) Chapter 9
Debtor. )

## PATIENT CARE OMBUDSMAN REPORT

Deborah Burian, the duly appointed patient care ombudsman, pursuant to 11 U.S.C. § 333(b)(2) files hereby her thirteenth periodic report, for the period October 17, 2018 to December 15, 2018.

/s/ Mark B. Toffoli
Mark B. Toffoli OBA # 9045

THE GOODING LAW FIRM, P.C.
204 North Robinson Ave., Suite 605
Oklahoma City, Oklahoma 73102
TELEPHONE: (405) 948-1978
TELEFACSIMILE: (405) 948-0864
EMAIL: mtoffoli@goodingfirm.com

ATTORNEYS FOR
DEBORAH BURIAN

Patient Care Ombudsman's Thirteenth Report in re: Pushmataha County Hospital – City of Antlers Healthcare Authority

Case 16-81001

COMES NOW, Deborah Burian, Patient Care Ombudsman ("Ombudsman") and pursuant to 11 U.S.C. 333 submits her Thirteenth report.

**Factual Background**

On the 20th day of October 2016, the United States Trustee for the Eastern District of Oklahoma appointed Deborah Burian as Patient Care Ombudsman in the case of Pushmataha County Hospital – City of Antlers Healthcare Authority.

This is the Ombudsman's Thirteenth report and includes the reporting period from October 17th, 2018 through December 15th, 2018.

**Basis of Review**

As a condition of participation in Medicare, the primary payor for most hospitals, facilities must be surveyed and ensured to be in compliance with the Medicare Conditions of Participation (42 CFR Part 485 Subpart F) by an approved body. This survey is completed by a state regulatory agency (Oklahoma State Department of Health - OSDH) or a private accrediting agency; most commonly the Joint Commission on Health Care Accreditation (JCAHO). Pushmataha County Hospital, herein referred to as "Pushmataha" is currently licensed and certified by the Oklahoma State Department of Health (OSDH).

Pushmataha also participates in the Medicare program as a "Swing Bed" facility and is certified to provide Skilled Nursing Facility (SNF) care to approved patients.

For all healthcare facilities, care standards are established by regulation; regulations are then translated at the federal and state levels with "interpretive guidelines." These guidelines provide a map for the generally accepted quality of care which must be provided. States may have additional guidance; where that guidance may differ at the state and federal levels, the more stringent regulation applies. Throughout the Ombudsman's monitoring role, in addition to other issues which may arise, Ombudsman is assessing whether observed care and services meet those requirements.

**Sixty-Day Review**

1) During the 60-day period of this review, Ombudsman maintained contact with facility to monitor operations and address any concerns which might arise A site visit was conducted on 11/8/2018.

2) During the site visit, Ombudsman conducted overall facility rounds and investigated prior issues including the temperature of the handwashing sinks in the kitchen and the preventative maintenance of medical and facility equipment. Ombudsman additionally interviewed patients, family members and staff regarding patient care and facility operations.

3) In relation to ongoing issues with temperatures at the handwashing sink, Ombudsman tested sink temperatures using an appropriately calibrated thermometer. Water temperature was measured at 130 degrees Fahrenheit (F) thus far exceeding the recommended minimum temperature of "at least 100 Fahrenheit noted at OAC:257-9.14. The facility is in compliance with state guidelines for sanitation regarding hand washing temperatures.

4) Ombudsman observed meal trays and compared trays with physician orders. One specialty diet, 50 Grams Carbohydrate was ordered This menu and all others were provided in compliance with the noted orders and no concerns were noted. Dietary staff report no difficulties with ordering and receiving needed supplies and equipment. Refrigerated and frozen foods were appropriately dated and well within approved usage dates.

5) During the monitoring period and during the site visit, there were no complaints nor concerns voiced regarding direct patient care or staffing.

6) The ombudsman had previously identified a concern regarding the ongoing provision of preventative maintenance of diagnostic and durable medical equipment, as required at CFR 482.41 (c)(2) "Facilities, supplies, and equipment must be maintained to ensure an acceptable level of safety and quality. During this site visit, Ombudsman reviewed medical equipment maintenance records and stickers 100% of observed equipment had a currentl inspection sticker. Due to the persistence of this issue, monitoring will continue.

7) In the next 60 days Ombudsman will continue to monitor and will address any concerns as they may arise.

Wherefore, Ombudsman, Deborah Burian prays the court accept and approve this 60-day report of Deborah Burian and for such other relief as the Court deems just and appropriate.

Respectfully submitted,

Deborah Burian
3101 N. Classen Blvd, Ste 217
Oklahoma City, OK
73118
(405) 623-0778